Filed in District Court
State of Minnesota
6/3/2019 3:54 PM

| | |
|---|---|
| **STATE OF MINNESOTA** | **DISTRICT COURT** |
| **COUNTY OF HENNEPIN** | **FOURTH JUDICIAL DISTRICT** |
| | **CASE TYPE: CIVIL-OTHER** |

| | |
|---|---|
| TIM WALSH, JULIE WALSH, GREGORY KETCHUM, PATRICIA KETCHUM, PETER MURPHY, CARY BASNAR, and FRANK BACA, on Behalf of Themselves and All Others Similarly Situated, | Court File No.: |
| Plaintiffs, | |
| v. | |
| CLIFFORD M. BUCHHOLZ, MICHAEL J. HEROLD, RYAN A. MARTORANO, MICK OCCHIATO, FRANK R. RAMIREZ, BRENT M. T. KEELE, STEPHEN D. TEBO, JERRY MORGENSEN, JAMES L. PARKE, JOSEPH D. SCHOFIELD, III, ST. RENATUS, LLC, and SR MERGER SUB, LLC, | **SUMMONS** |
| Defendants. | |

TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required to serve upon the undersigned attorney an Answer to the Complaint, which is herewith served upon you, within twenty (20) days after service of this Summons upon you, exclusive of the date of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

Dated: June 3, 2019

        *s/Daniel C. Hedlund*
        Daniel C. Hedlund (#258337)
        David A. Goodwin (#386715)
        **GUSTAFSON GLUEK PLLC**
        Canadian Pacific Plaza
        120 South Sixth Street, Suite 2600
        Minneapolis, MN 55402
        Telephone: (612) 333-8844
        Facsimile: (612) 339-6622

1

Filed in District Court
State of Minnesota
6/3/2019 3:54 PM

E-mail: dgustafson@gustafsongluek.com
dgoodwin@gustafsongluek.com

Brian J. Robbins
Stephen J. Oddo
**ROBBINS ARROYO LLP**
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-Mail: brobbins@robbinsarroyo.com
soddo@robbinsarroyo.com

*Attorneys for Plaintiffs*

STATE OF MINNESOTA

COUNTY OF HENNEPIN

DISTRICT COURT

FOURTH JUDICIAL DISTRICT

CASE TYPE: CIVIL

TIM WALSH, JULIE WALSH, GREGORY
KETCHUM, PATRICIA KETCHUM, PETER
MURPHY, CARY BASNAR, and FRANK
BACA, on Behalf of Themselves and All
Others Similarly Situated,

Plaintiffs,

v.

CLIFFORD M. BUCHHOLZ, MICHAEL J.
HEROLD, RYAN A. MARTORANO, MICK
A. OCCHIATO, FRANK R. RAMIREZ,
BRENT M. T. KEELE, STEPHEN D. TEBO,
JERRY MORGENSEN, JAMES L. PARKE,
JOSEPH D. SCHOFIELD, III, ST. RENATUS,
LLC, and SR MERGER SUB, LLC,

Defendants.

Case No.

CLASS ACTION

COMPLAINT BASED UPON SELF-
DEALING AND BREACH OF FIDUCIARY
DUTY

DEMAND FOR JURY TRIAL

## SUMMARY OF THE ACTION

1.      This is a unitholder class action brought by plaintiffs on behalf of holders of

common units of Apollonia, LLC ("Apollonia" or the "Company") against St. Renatus, LLC ("St.

Renatus"), SR Merger Sub, LLC ("Merger Sub"), certain St. Renatus directors, and certain

Apollonia managers and governors arising out of the Individual Defendants' (as defined herein)

agreement to sell Apollonia to St. Renatus at an unfair price of 200,000 common units of St.

Renatus (the "Merger").

2.      Apollonia and St. Renatus have been intertwined for most of their existence.

Apollonia owned the dental indication of the assigned patents known as the "Clay 499 Patent" and

the "Kollar 282 Patent "for a nasally delivered anesthetizing composition, Kovanaze®, before

Filed in District Co
State of Minneso
6/3/2019 3:54 P

transferring the patent to St. Renatus in exchange for receiving royalty payments equal to 10% of all sales generated from products that "involve anesthetizing a portion or all of a patient's maxillary dental arch using a nasally delivered anesthetizing composition." If St. Renatus failed to make the payments or failed to make commercially reasonable progress in marketing Kovanaze, St. Renatus would be in violation of the agreement and, in certain circumstances, the patent would revert back to Apollonia.

3.      St. Renatus has failed miserably to market Kovanaze and is in grave economic peril. It is in arrears on no less than $9.5 million of debt, was unable to reach a forbearance agreement with its lenders, and has no real plan, as admitted in Apollonia's Proxy Statement dated March 29, 2019 (the "Proxy"), to pay back the money owed. St. Renatus has already laid-off most of the operations' employees and now operates with a skeleton crew of six full-time employees and one part-time employee.

4.      Rather than transferring the patent back to Apollonia, St. Renatus instead engaged in a scheme to eliminate the royalty obligation by acquiring Apollonia at a depressed value. This plan was made possible only through defendants' successful efforts to eliminate the significant voting and equity interest held by Apollonia's founders, including Mark D. Kollar ("Kollar"), through threats of lawsuits and other unsavory tactics, which cleared the way for Apollonia's Board of Governors (the "Board") and unitholder approval of the Merger. St. Renatus' proposal, which was rubber-stamped by a complicit Apollonia Board, called for Apollonia unitholders collectively to receive 200,000 of St. Renatus units.

5.      Defendants attempted to make this proposal attractive to Apollonia unitholders by artificially depressing the perceived value of Kovanaze, Apollonia, and St. Renatus in order to acquire Apollonia for far less than full value. The Merger conveniently removed the royalty

- 2 -

State of Minnesc
6/3/2019 3:54 F

obligation, extinguished the $3.5 million owed by St. Renatus on royalty payments to Apollonia, caused the loss of capital treatment tax on the royalties; eliminated Apollonia investors' suspended losses, perfected the transfer to St. Renatus of potential medical uses of Kovanaze, and extinguished other undisclosed claims Apollonia had against St. Renatus. The net effect of defendants' wrongful actions will be to diminish the returns for Apollonia unitholders once St. Renatus markets Kovanaze properly and/or secures a strategic partner while favoring St. Renatus unitholders.

6.     Before approving the Merger, the Apollonia's Board, never truly considered any other strategic alternatives. In fact, the Board did not consider any alternatives other than the proposal from St. Renatus and "maintaining the status quo." This is not surprising given that four of the five members of the Apollonia Board also owned shares of St. Renatus. Further, despite the survival of the Company being at stake, the Proxy indicates that Board met only a single time, on October 12, 2018, and simply accepted St. Renatus' offer as presented without negotiation. Nor is there any indication that the Board attempted to independently value or market the potential medical uses for Kovanaze which were not transferred to St. Renatus.

7.     The Board also relied on a deeply flawed fairness opinion from a financial "advisor," Palladian Valuation, LLC ("Palladian"). Although the Proxy indicates Palladian was "retained" by the Apollonia Board, Palladian was actually chosen and paid by Blue Ocean Enterprises, Inc. ("Blue Ocean"), the majority unitholder of defendant St. Renatus, and whose representatives on the St. Renatus board included defendants Brent M. T. Keele ("Keele") and James L. Parke ("Parke"). Defendant Parke is CEO of Otter Products, LLC, the parent of Blue Ocean, and is Blue Ocean's CEO. Blue Ocean and defendant Keele were instrumental in orchestrating the takeover of Apollonia on the unfair terms. Accordingly, Palladian was incapable

- 3 -

State of Minnes
6/3/2019 3:54 F

of providing an independent opinion as to the fairness of the Merger and it showed in the arbitrary and incomplete manner in which it performed its valuation analyses. Palladian was told by St. Renatus management and Apollonia management to assume that the present value of Apollonia was zero, *and was instructed to use this zero dollar valuation* for purposes of its analyses, which it did. Apollonia was valued at zero despite the fact that Apollonia had a 10% royalty stake in St. Renatus, which was at the same time being valued by Palladian in the hundreds of millions of dollars. Moreover, Williamsburg Expert Financial Analysis, LLC ("WEFA"), an independent valuation firm, had valued Apollonia at $120 million in 2013, before approval by the U.S. Food and Drug Administration ("FDA") had been secured for Kovanaze.

8.      Palladian's conclusion of fairness was based solely on comparing the zero value it was instructed to place on Apollonia to the "something" (200,000 St. Renatus units) members of the Class (as defined herein) would receive from St. Renatus and concluding that this "something" was better than nothing. The only valuation analyses Palladian performed were of St. Renatus. And even though those analyses estimated a 10% implied equity value of St. Renatus to be worth between $3.5 million and $20.3 million, Palladian nonetheless was instructed to and did assign a value of zero to Apollonia.

9.      Palladian admitted that it "did not attempt to value Apollonia or its assets," as part of its efforts to evaluate the Merger. Most egregiously, Palladian made no attempt to value the potential medical uses of Kovanaze; the rights to which Apollonia retained and had not assigned to St. Renatus.

10.     On or about March 29, 2019, Apollonia solicited votes from its unitholders on the approval of the Merger via the Proxy. The Proxy contained materially misleading information and failed to disclose additional material information. In particular, the Proxy failed to disclose

- 4 -

Filed in District Co
State of Minnesc
6/3/2019 3:54 F

material information concerning: (i) conflicts of interest among members of Apollonia's Board; (ii) the financial analyses performed by Palladian in support of its so-called "fairness opinion"; (iii) the St. Renatus forecasts Palladian relied upon for its analyses; and (iv) the process (or lack thereof) that led to the Merger, including, for example, the fact that the acquiring company, St. Renatus (and not Apollonia), effectively provided the "fairness" opinion cited in the Proxy.

11.     In pursuing the unlawful plan to induce Apollonia unitholders to approve the Merger via an unfair and uninformed process, each of the defendants violated applicable law by directly breaching and/or aiding and abetting the other defendants' breaches of their fiduciary duties of loyalty, due care, diligence, independence, good faith, and fair dealing.

12.     Because the Individual Defendants dominate and control the business and corporate affairs of Apollonia, there exists an imbalance and disparity of economic power between them and the unitholders of Apollonia.  Therefore, it is inherently unfair for the Individual Defendants to execute and pursue any Merger agreement under which they will reap disproportionate, self-enriching benefits to the exclusion of obtaining the maximum unitholder value.  Nonetheless, instead of attempting to negotiate a contract reflecting the best consideration reasonably available for Apollonia's unitholders, who they were duty bound to serve, the Individual Defendants disloyally placed their own interests first, and tailored the terms and conditions of the Merger to meet their own personal needs and objectives.

13.     In short, the Merger is designed to unlawfully divest Apollonia unitholders of the Company's valuable assets for grossly inadequate consideration.

14.     To remedy the defendants' legal violations resulting from defendants' negotiation and approval of the Merger as set forth herein, plaintiffs seek, *inter alia*: (i) damages; and/or (ii) rescission of, to the extent already implemented, the Agreement and Plan of Merger entered

State of Minnesc
6/3/2019 3:54 F

into by the parties dated November 7, 2018 (the "Merger Agreement") or any of the terms thereof and/or rescissory damages.

## JURISDICTION AND VENUE

15.    This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this County, or is an individual who has sufficient minimum contacts with Minnesota so as to render the exercise of jurisdiction by the Minnesota courts permissible under traditional notions of fair play and substantial justice.

16.    Venue is proper in this Court because one or more of the defendants either resides in or maintains executive offices in this County, a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to Apollonia's unitholders occurred in this County, and defendants have received substantial compensation in this County by doing business here and engaging in numerous activities that had an effect in this County.

## THE PARTIES

17.    Plaintiff Tim Walsh was a unitholder of Apollonia at all times relevant hereto.

18.    Plaintiff Julie Walsh was a unitholder of Apollonia at all times relevant hereto.

19.    Plaintiff Gregory Ketchum was a unitholder of Apollonia at all times relevant hereto.

20.    Plaintiff Patricia Ketchum was a unitholder of Apollonia at all times relevant hereto.

21.    Plaintiff Peter Murphy was a unitholder of Apollonia at all times relevant hereto.

22.    Plaintiff Cary Basnar was a unitholder of Apollonia at all times relevant hereto.

23.   Plaintiff Frank Baca was a unitholder of Apollonia at all times relevant hereto.

24.   Defendant Michael J. Herold ("Herold") was the Chairman of the Board of Apollonia and was a member of the Special Committee created to consider the Merger.

25.   Defendant Ryan A. Martorano ("Martorano") was a member of the Board and was a member of the Special Committee created to consider the Merger.  Defendant Martorano was the only Apollonia governor who did not own St. Renatus common units.

26.   Defendant Mick A. Occhiato ("Occhiato") was a member of the Board and was a member of the Special Committee created to consider the Merger.

27.   Defendant Clifford M. Buchholz ("Buchholz") was a member of the Board. As part of the Merger, St. Renatus will assume the Company's financial obligation to defendant Buchholz of an amount not to exceed $250,000. Mr. Buchholz was paid more than $1 million in consulting fees from St. Renatus from 2008 to 2016.

28.   The defendants named above in ¶¶24-27 are sometimes collectively referred to herein as the "Individual Defendants."

29.   Defendant Frank R. Ramirez is a director, Chairman of the Board of Directors, and Chief-Executive Officer of St. Renatus.

30.   Defendant Keele is a director of St. Renatus.

31.   Defendant Stephen D. Tebo is a director of St. Renatus.

32.   Defendant Jerry Morgensen ("Morgensen") is a director of St. Renatus.

33.   Defendant Parke is a director of St. Renatus.

34.   Defendant Joseph D. Schofield, III is a director of St. Renatus.

35.   The defendants named above in ¶¶29-34 are sometimes collectively referred to herein as the "St. Renatus Defendants."

- 7 -

State of Minnesota
6/3/2019 3:54 P

36.    Defendant St. Renatus is a privately held limited liability company based in Fort Collins, Colorado, and incorporated in Delaware.

37.    Defendant Merger Sub is a Minnesota limited liability company and a wholly owned subsidiary of defendant St. Renatus.  Upon completion of the Merger, defendant Merger Sub will merge with and into Apollonia and cease its existence, and Apollonia shall continue as a wholly owned subsidiary of defendant St. Renatus.

### INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

38.    Under Minnesota law, the governors and managers of limited liability companies have default fiduciary duties of loyalty and care to unitholders.[1]  To diligently comply with these duties, neither the governors nor the managers may take any action that:

(a)    adversely affects the value provided to the company's unitholders;

(b)    will discourage, inhibit, or deter alternative offers to purchase control of the company or its assets;

(c)    contractually prohibits themselves from complying with their fiduciary duties;

(d)    will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the company's unitholders; and/or

(e)    will provide the governors and/or managers with preferential treatment at the expense of, or separate from, the outside unitholders.

39.    In accordance with their duties of loyalty, the Individual Defendants, as members of the Board and/or managers of Apollonia, are obligated under Minnesota law to refrain from:

---

[1] While the limited liability companies can arguably affirmatively opt out of some fiduciary duties, Apollonia did not do so.

State of Minnesc
6/3/2019 3:54 F

(a)     participating in any transaction where the governors' or managers' loyalties are divided;

(b)     participating in any transaction where the governors or managers receive, or are entitled to receive, a personal financial benefit not equally shared by the outside unitholders of the company; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the outside unitholders.

40.     Defendants, separately and together, in connection with the Merger, are knowingly or recklessly violating their fiduciary duties and aiding and abetting such breaches, including their duties of loyalty, good faith, and independence owed to plaintiffs and other unitholders of Apollonia. Certain of the defendants stand on both sides of the transaction, are engaging in self-dealing, are obtaining for themselves personal benefits, including personal financial benefits not shared equally by plaintiffs or the Class. A certain Apollonia governor, defendant Martorano, will retain his prestigious and lucrative position at the post-Merger company. Accordingly, the Merger benefits certain Individual Defendants in significant ways not shared with the Class members. As a result of the Individual Defendants' self-dealing and divided loyalties, neither plaintiffs nor the Class received adequate or fair value for their Apollonia units in the Merger.

41.     Because the Individual Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, and independence in connection with the Merger, the burden of proving the inherent or entire fairness of the Merger, including all aspects of its negotiation, structure, price, and terms, is placed upon defendants as a matter of law.

06/04/2019

State of Minnes
6/3/2019 3:54 F

## ST. RENATUS FAILS TO EFFECTIVELY MARKET KOVANAZE

42.     St. Renatus' sole purpose was to bring Kovanaze to market.  On June 29, 2016, the FDA approved St. Renatus' nasal spray for sale in the United States.  St. Renatus began selling the nasal spray in November 2016.  Per an agreement dated July 28, 2018, Apollonia was entitled to a 10% royalty on all sales of the nasal spray.  In addition, St. Renatus owed Apollonia additional royalties on patents known as the "Clay 499 Patent and the Kollar 282 Patent."  The Proxy failed to disclose the terms of this royalty agreement nor did it provide a description of the patents, and the clear assignment of only the dental uses and the derivative follow on intellectual property to St. Renatus.

43.     Despite receiving FDA approval, St. Renatus failed to comply with its obligations to meaningfully monetize Apollonia's patent pursuant to the patent assignment.  In fact, instead of making reasonable efforts to commercially market Kovanaze, St. Renatus and its board, with the complicit acquiescence of the Apollonia Board, acted to artificially depress the perceived value of Kovanaze and Apollonia.  Among the steps defendants took toward that goal was on January 12, 2018, to terminate substantially all of St. Renatus employees.  St. Renatus hired back a number of its former employees, but in March 2019, it again laid off its employees and is now left with just six full-time employees, most of which are sales representatives, and one part-time employee.

## THE FLAWED SALES PROCESS

44.     As noted above, pursuant to the terms of the transfer of the patent assignment, St. Renatus was required to pay the royalty and make commercially reasonable progress in marketing Kovanaze.  Rather than doing so, the St. Renatus Defendants decided that the only path forward for St. Renatus was to acquire Apollonia, thereby removing the royalty obligation, and then attempt to reengage investors, lenders, and/or strategic partners on terms more favorable to St. Renatus

State of Minnes
6/3/2019 3:54 P

and its investors.

45.     A major impediment to St. Renatus' desire to eliminate the royalty payment and, in effect, eliminate Apollonia, were the founders of Apollonia, James P. Mulvahill ("Mulvahill") and Kollar.   Through implied and conveyed extortive threats of lawsuits and U.S. Securities and Exchange Commission and/or Federal Bureau of Investigation investigations and through secretive acts of collusion between the former managing officer of Apollonia and the controlling executives of St. Renatus, St. Renatus bullied the founders into relinquishing their significant equity positions and then lied to investors that Apollonia intended to raise capital with the surrendered units.  Mulvahill and Kollar surrendered more than 1.2 million voting units in October 2017, representing about 63% of Apollonia's outstanding voting units at the time.

46.     On October 9, 2017, the Individual Defendants issued a newsletter to investors informing them that the founders had surrendered a substantial majority of their ownership interests for purposes of permitting the company to raise capital without further dilution. Thereafter, the Individual Defendants did not make any effort to raise capital with the units and instead acquiesced to the takeover by St. Renatus to the detriment of Apollonia unitholders and the Company.

47.     While trying to force out the founders and making only minimal efforts to market Kovanaze, the Proxy indicates that the members of the St. Renatus board met on multiple occasions in 2017 and 2018, to discuss acquiring Apollonia.  The Proxy is vague, however, as to when it determined that 200,000 St. Renatus common units was the appropriate consideration to offer or how it came to that conclusion.   Still, on March 2, 2018, the St. Renatus board "(i) determined that it is in the best interest of St. Renatus and its members, and declared it advisable, for St. Renatus to enter into the merger agreement and (ii) approved and adopted the

State of Minnesc
6/3/2019 3:54 P

merger agreement and the transactions contemplated thereby."

48.     It is unclear from the Proxy when this proposal was provided to the Board of Apollonia.  However, the Proxy does state in nearly identical language to the description of the St. Renatus board approval, that on October 12, 2018, the Apollonia Board "(i) determined that it is in the best interest of Apollonia and its members, and declared it advisable, for Apollonia to enter into the merger agreement and (ii) approved and adopted the merger agreement and the transactions contemplated thereby."

49.     The Proxy also states that at some point, presumably prior to October 12, 2018, the Board appointed a Special Committee consisting of defendants Herold, Martorano, and Occhiato to consider the Merger.  The Proxy is silent as to if and/or when the Special Committee actually met, other than stating that on October 12, 2018, the Special Committee met and voted to recommend that the full board approve the Merger.

50.     What is clear is that the Special Committee and the Board only considered the Merger versus the "status quo."  It did not consider any other suitors for the Company, try to shop the Company, or assess the value of Apollonia if it was to reacquire the dental patent rights from St. Renatus.  Nor did it make any attempt to market or monetize the medical uses of Kovanaze it retained, or use as leverage in negotiations with St. Renatus its control over other medical uses for Kovanaze.

51.     Based on investigation and belief, another Apollonia Board member, defendant Buchholz, was the subject of threats similar to those directed previously at the founders and considered taking action against St. Renatus leadership for extortion as a result.  Ultimately, these threats and the promise to repay approximately $250,000 in notes owed by Apollonia and indemnification against future claims to defendant Buchholz as a priority item after the Merger

State of Minnesota
6/3/2019 3:54 F

eventually swayed defendant Buchholz to defect and start acting in the best interests of St. Renatus instead of Apollonia.

52.     At all times, defendant Buchholz was well aware that Blue Ocean, not Apollonia, had hired Palladian and he was instrumental in cooperating with Blue Ocean and St. Renatus to ensure that Apollonia was acquired at whatever price they designated regardless of its true value.

53.     Defendant Occhiato was likewise disloyal, being, himself, a St. Renatus unitholder who stood to gain financially from St. Renatus acquiring Apollonia and its valuable royalty rights for a fraction of its true worth.

54.     Defendant Martorano is loyal to a St. Renatus board member and significant investor, defendant Morgensen, who has employed defendant Martorano for more than fifteen years. Defendant Martorano was promised a board seat at the surviving entity if he acquiesced to the Merger.

55.     Ultimately, the Board as a whole, with defendant Buchholz abstaining, approved the Merger and the Merger Agreement exactly as presented by St. Renatus.

56.     Despite the appearance of (minimal) action by the Individual Defendants, in reality, the outcome of the Board meeting was never in doubt. Apollonia, St. Renatus, and certain other parties entered into a Memorandum of Understanding ("MOU") detailing the major terms of the Merger on February 23, 2018, a month before the meeting of St. Renatus' board and eight months before the Board of Apollonia met to consider the Merger. Despite the claimed "extensive negotiations" the terms did not materially change from the MOU.

## THE MERGER UNDERVALUES APOLLONIA

57.     The Special Committee claims to have considered the fairness opinion of Palladian and references the opinion as support for its approval of the Merger. Palladian, however, was selected and paid for by Blue Ocean, whose representatives, defendants Keele and Parke, sat on

- 13 -

State of Minneso
6/3/2019 3:54 F

the St. Renatus board. The Proxy does not disclose who paid for the Palladian opinion, how much Palladian was paid for its fairness opinion nor how much of that fee was contingent on the Merger closing. Because it was influenced by the conflicted nature of its representation, Palladian failed to properly evaluate the terms of the Merger.

58.     Palladian did not conduct any sort of valuation of Apollonia, and instead, at the direction of Apollonia's management, used *St. Renatus'* management's claimed valuation of Apollonia, which was zero. Indeed, Palladian acknowledged that it "[n]either made nor obtained an independent valuation or appraisal of the assets, liabilities or solvency of the Company or St. Renatus, nor the value or ownership of patents and intellectual property." Instead, Palladian acknowledged that it accepted without question the representation from defendants that without the Merger, "St. Renatus would cease to exist" and thus any revenue stream due Apollonia would be nonexistent.

59.     Because it accepted the valuation of Apollonia at zero and failed to independently value any of Apollonia's intellectual property rights, Palladian necessarily made no effort to value the potential medical uses of Kovanaze that Apollonia retained. This alone renders Palladian's opinion defective and worthless.

60.     Aside from relying on the biased valuation provided by the acquiring company, Palladian's valuation analyses were flawed for numerous other reasons. Even though Apollonia was entitled to 10% of all *revenue* St. Renatus earned, the Merger called for Apollonia to be acquired by St. Renatus for effectively 10% of St. Renatus' future *profits*, another factor Palladian failed to consider.

61.     Palladian used three different valuation metrics to consider the value of this 10% (the amount 200,000 units would roughly be equal to): (i) a comparable public companies analysis;

- 14 -

Filed in District Co...
State of Minneso...
6/3/2019 3:54 F

(iii) a comparable public transactions analysis; and (iii) a discounted cash flow analysis.  These analyses provided a range of valuations for the 10% of St. Renatus of $3.5 million to $20.3 million. It defies explanation how St. Renatus could be worth tens of millions dollars, or even hundreds of millions of dollars, and Apollonia, which was due a 10% royalty on all *revenue* (not just profit) earned by St. Renatus, could be worth zero.  Palladian nonetheless compared its value of 10% of St. Renatus to the zero value estimate and opined that receiving "something" is better than zero, and thus the transaction must be "fair."

62.     Further, at least two of the valuation analyses used by Palladian were inappropriate. The first method relies on comparable *public* companies.  However, St. Renatus is not a publicly traded company.  Further, the description of the analysis does not identify the comparable companies used, and Palladian admits that the public companies analysis used companies that were "substantially larger" than St. Renatus.  The public companies analysis valued the 10% equity interest in St. Renatus at between $3.5 million and $14.9 million.

63.     Similarly, the comparable transactions analysis used transactions involving public companies that "were acknowledged to be substantially larger" and the description of the analysis does not identify the transactions used.  The public transactions analysis valued the 10% equity interest in St. Renatus at between $10.6 million and $20.3 million.

64.     Finally, Palladian performed a discounted cash flow analysis based on undisclosed projections for St. Renatus for 2019 to 2021.  For the analysis, Palladian used discount rates of 50-60% and revenue multiples of 6x to 9.5x without any explanation of why it was using those inputs. The discounted cash flow analysis valued the 10% equity interest in St. Renatus at between $9.6 million and $19.5 million.

Filed in District Court
State of Minnesota
6/3/2019 3:54 P

65.     For all three analyses, Palladian used St. Renatus' projections for the years 2019 to 2021.   However, the Proxy did not include any details about the projections, much less the projections themselves.  Without access to these forecasts or any information about the forecasts, Apollonia unitholders had no way of determining whether, based on the estimates of St. Renatus, the St. Renatus units they would receive in the Merger were adequately valued.  The Proxy also fails to explain how St. Renatus management forecasted revenue to grow to more than $81 million for the 2021 fiscal year when for the 2017 fiscal year, over a year after FDA approval and launch, St. Renatus' revenue was only $212,000.

66.     There is likewise no indication that the Board or Palladian considered prior valuations of Apollonia, which were not disclosed in the Proxy.   For instance, WEFA, an independent valuation firm, valued Apollonia at $120 million in 2013, before FDA approval had been secured for Kovanaze.

## THE BOARD FAILED TO DISCLOSE ALL MATERIAL INFORMATION CONCERNING THE MERGER

67.     Finally, it was critical that unitholders received complete and accurate information on the Merger.  The Individual Defendants failed to provide Apollonia's unitholders with information to allow them to make an informed decision about how to vote on the Merger.  The Proxy, which recommended that Apollonia's unitholders vote in favor of the Merger, omitted material information concerning:  (i) conflicts among members of Apollonia's Board; (ii) the financial analysis performed by Palladian in support of it so-called "fairness opinion"; (iii) the forecasts for St. Renatus that Palladian used in its analyses; and (iv) the lead up to the Merger.

68.     Concerning potential conflicts between members of the Board and unitholders, the Proxy fails to disclose whether members of the Board owned St. Renatus units and how many units of St. Renatus each member owned.  In fact, of the Apollonia Board members, only defendant

State of Minnesc
6/3/2019 3:54 F

Martorano did *not* own St. Renatus units; but, again, no disclosure is made about the close relationships between defendant Martorano and substantial St. Renatus investor, defendant Morgensen.

69.     The background on the Merger in the Proxy fails to disclose any details about: (i) the negotiation of the MOU; (ii) when the offer to acquire Apollonia was delivered to the Board; (iii) whether any meetings took place besides the single October 12, 2018 meeting; and (iv) the rights to the medical uses of the patents that Apollonia retained.

70.     Regarding Palladian's opinion, the Proxy fails to disclose: (i) St. Renatus' financial projections through fiscal 2021 that were provided to Palladian and formed its opinion; (ii) why Palladian did not conduct its own analysis of the value of Apollonia; (iii) the basis for St. Renatus' management to value Apollonia at $0; and (iv) key metrics and inputs Palladian used for its analyses.

71.     Furthermore, while the Proxy informed investors that failing to vote or abstaining from the vote would register as a "no vote," the actual Proxy card with the voting instructions that was sent to voting Apollonia unitholders specifically stated that "[i]f no choice is specified [on the card], the proxy will be voted FOR Proposal No. 1 and Proposal No. 2 with respect to your voting units." Accordingly, the treatment St. Renatus would give to abstention votes was unclear to Apollonia unitholders. Upon information and belief, abstentions were treated as having voted for the Merger.

72.     Additionally, as set forth in the Merger Agreement which was attached as Annex A to the Proxy, "[p]rior to the Closing, the Company shall have delivered to each Member … a Letter Agreement, each in the form attached hereto as Exhibit C (a "Letter Agreement")." That Letter Agreement which contained the terms for exchange of the units, was in fact mailed to

- 17 -

Filed in District Co
State of Minneso
6/3/2019 3:54 F

Apollonia unitholders after the vote.  However, it was not attached to the Merger Agreement that was part of the Proxy.

73.    Finally, even with 45.3% of the units locked up in favor of the Merger, only 54% of the outstanding units of Apollonia voted to approve.  Accordingly, the other 8.7% consisted of unaffiliated units voting to approve.  However, as set forth above, the votes of the 8.7% unaffiliated units were uninformed due to the materially deficient Proxy.

## CLASS ACTION ALLEGATIONS

74.    Plaintiffs bring this action for themselves and on behalf of all unitholders of Apollonia who have been or will be harmed by the conduct described herein (the "Class"). Excluded from the Class are the defendants.

75.    This action is properly maintainable as a class action.

76.    The Class is so numerous that joinder of all members is impracticable.  Pursuant to the Proxy, there were 830,045 Apollonia units outstanding as of March 26, 2019.

77.    There are questions of law and fact that are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, *inter alia*, the following:

(a)    whether the Individual Defendants breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiffs and the other members of the Class in connection with the Merger;

(b)    whether the Individual Defendants engaged in self-dealing in connection with the Merger;

State of Minneso
6/3/2019 3:54 F

(c) whether the Individual Defendants breached any of their other fiduciary duties owed to plaintiffs and the other members of the Class in connection with the Merger, including the duties of good faith, diligence, and fair dealing;

(d) whether the Individual Defendants failed to disclose objectively material information to Apollonia's unitholders;

(e) whether St. Renatus, the St. Renatus Defendants, and Merger Sub aided and abetted the Individual Defendants' breaches of fiduciary duties; and

(f) whether plaintiffs and the other members of the Class suffered damages from the Merger.

78. Plaintiffs' claims are typical of the claims of the other members of the Class and plaintiffs do not have any interests adverse to the Class.

79. Plaintiffs have retained competent counsel experienced in litigation of this nature and will fairly and adequately represent and protect the interests of the Class.

80. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

81. Plaintiffs anticipate that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

82. Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

State of Minnesc
6/3/2019 3:54 P

## FIRST CAUSE OF ACTION

### Claim for Breach of Fiduciary Duty
### (Individual Defendants)

83.     Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

84.     The Individual Defendants violated their fiduciary duties of care, loyalty, and independence and good faith owed to the unitholders of Apollonia and acted to put their personal interests ahead of the interests of Apollonia unitholders.

85.     By the acts, transactions, and courses of conduct alleged herein, defendants, individually and acting as a part of a common plan, to unfairly deprived plaintiffs and other members of the Class of the true value inherent in and arising from their units of Apollonia.

86.     The Individual Defendants violated their fiduciary duties by entering Apollonia into the Merger without regard to the effect of the transaction on Apollonia unitholders.

87.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and independence owed to the unitholders of Apollonia because, among other reasons:

(a)     they failed to take steps to maximize the value of Apollonia to its unitholders;

(b)     they failed to properly value Apollonia and its various assets and operations;

(c)     they failed to disclose all material information; and

(d)     they ignored or did not protect against the numerous conflicts of interest resulting from the governors' own interrelationships or connection with the Merger and St. Renatus.

- 20 -

State of Minnesc
6/3/2019 3:54 F

88.     Because the Individual Defendants dominate and control the business and corporate affairs of Apollonia, and are in possession of or have access to private corporate information concerning Apollonia assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the outside unitholders of Apollonia which makes it inherently unfair for them to pursue and recommend any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing unitholder value.

89.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiffs and the other members of the Class.

90.     The Individual Defendants engaged in self-dealing, did not act in good faith toward plaintiffs and the other members of the Class, and breached their fiduciary duties to the members of the Class.

91.     As a result of the Individual Defendants' unlawful actions, plaintiffs and the other members of the Class have suffered damages.

## SECOND CAUSE OF ACTION

### Claim for Aiding and Abetting Breaches of Fiduciary Duty
### (St. Renatus Defendants)

92.     Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

93.     The Individual Defendants owed to plaintiffs and the members of the Class certain fiduciary duties as fully set out herein.

94.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiffs and the members of the Class.

- 21 -

State of Minnesota
6/3/2019 3:54 P

95.    The St. Renatus Defendants colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiffs and the members of the Class.

96.    The St. Renatus Defendants participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests.   The St. Renatus Defendants obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants.   The St. Renatus Defendants will benefit, *inter alia*, from the acquisition of the Company at an inadequate and unfair price.

97.    Plaintiffs and the members of the Class have been damaged as a direct and proximate result of the aforementioned acts.

### THIRD CAUSE OF ACTION

**Claim for Aiding and Abetting Breaches of Fiduciary Duty**
**(Defendants St. Renatus and Merger Sub)**

98.    Plaintiffs incorporate by reference and reallege each and every allegation contained above as though fully set forth herein.

99.    The Individual Defendants owed to plaintiffs and the members of the Class certain fiduciary duties as fully set out herein.

100.    By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiffs and the members of the Class.

101.    Defendants St. Renatus and Merger Sub colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiffs and the members of the Class.

06/04/2019

State of Minnes
6/3/2019 3:54 F

102.   Defendants St. Renatus and Merger Sub participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests.  Defendants St. Renatus and Merger Sub obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants.  Defendants St. Renatus and Merger Sub will benefit, *inter alia*, from the acquisition of the Company at an inadequate and unfair price.

103.   Plaintiffs and the members of the Class have been damaged as a direct and proximate result of the aforementioned acts.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs demand injunctive relief, in their favor and in favor of the Class and against defendants as follows:

A.   Declaring that this action is properly maintainable as a class action;

B.   Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

C.   Rescinding, to the extent already implemented, the Merger Agreement;

D.   Declaring that the Individual Defendants breached their fiduciary duties;

E.   Declaring that the St. Renatus Defendants, St. Renatus, and Merger Sub aided and abetted the breach of fiduciary duties:

F.   Awarding damages to plaintiffs and the Class;

G.   Imposition of a constructive trust, in favor of plaintiffs and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

H.   Awarding plaintiffs the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

Filed in District Court
State of Minnesota
6/3/2019 3:54 PM

I.      Granting such other and relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: June 3, 2019                  *s/ Daniel C. Hedlund*
                                     Daniel C. Hedlund
                                     David A. Goodwin
                                     **GUSTAFSON GLUEK PLLC**
                                     Canadian Pacific Plaza
                                     120 South Sixth Street, Suite 2600
                                     Minneapolis, MN 55402
                                     Telephone: (612) 333-8844
                                     E-mail: dhedlund@gustafsongluek.com
                                                 dgoodwin@gustafsongluek.com

                                     BRIAN J. ROBBINS
                                     STEPHEN J. ODDO
                                     **ROBBINS ARROYO LLP**
                                     5040 Shoreham Place
                                     San Diego, CA 92122
                                     Telephone: (619) 525-3990
                                     Facsimile: (619) 525-3991
                                     E-Mail: brobbins@robbinsarroyo.com
                                                 soddo@robbinsarroyo.com

                                     *Attorneys for Plaintiffs*